UNITED STATES DISTRICT COURT     <u>For Online Publication Only</u>
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
PRO SIGHT – SYNDICATE 1110
AT LLOYD'S,

     Plaintiff,

  -against-         **<u>MEMORDANUM & ORDER</u>**
             17-CV-1415 (JMA) (AYS)

AMERICAN BUILDERS AND DEVELOPERS,
LLC,

     Defendant.
-----------------------------------------------------------X
**AZRACK, United States District Judge:**

On March 13, 2017, ProSight – Syndicate 1110 at Lloyd's ("Plaintiff") filed this declaratory judgment action against American Builders and Developers LLC ("Defendant"). Plaintiff seeks a determination from the Court that Plaintiff is not obligated, under the terms of an insurance contract entered into by the parties in March 2013, to defend or indemnify Defendant with respect to the claims alleged in a wrongful death action. That action, styled <u>Huizache v. American Builders & Developers, LLC, et al.</u>, No. CV 2017-002979, is currently pending in Superior Court in the State of Arizona, Maricopa County. Maria Virginia Huizache and Florenciano Axinicuilteco (the "Movants") have filed a motion to dismiss on behalf of Defendant, asserting that this Court lacks personal jurisdiction over Defendant and that Plaintiff filed this action in an improper venue under 28 U.S.C. § 1406(a). The Movants request, alternatively, that this case be transferred to the District of Arizona pursuant to § 1406(a). As explained below, the Court denies the motion to dismiss as moot, but transfers this matter to the United States District Court for the District of Arizona pursuant to 28 U.S.C. § 1404(a).

## I. BACKGROUND

On or around March 31, 2013, Plaintiff, a London and Wales based insurance carrier, sold to Defendant, an Arizona limited liability company, a wrap policy covering certain construction projects in Arizona (the "Wrap Policy"). Defendant used an insurance broker, Eaton-Provident Group ("Eaton"), based in Scottsdale, Arizona. Eaton then contacted RT Specialty, an insurance wholesaler located in California to procure the Wrap Policy. Although the Wrap Policy was issued by Plaintiff, the terms of the agreement were negotiated via email between RT Specialty, and Plaintiff's agent, Coventry Risk Specialty ("Coventry"). (See Movants' Memorandum of Law in Support of the Motion to Dismiss ("Movants' Mem.") at 6; Declaration of Brandon P. Rainey ("Rainey Decl."), Exs. D-F.) RT Specialty is located in California. Coventry has an office in Farmingdale, New York. Upon completion of the negotiations, Defendant executed the Wrap Policy electronically from Arizona, (see Declaration of Von E. Dix in Support of Movants' Motion to Dismiss ("Dix Decl. I") ¶ 13), and Coventry produced the Wrap Policy from its Farmingdale office. Neither Defendant, nor any of its agents traveled to New York, either to negotiate or sign the Wrap Policy. There is no evidence that Defendant or Eaton had any contact with Coventry in New York.

The Wrap Policy identifies Coventry as the "producer" and lists Coventry's address in Farmingdale. The Wrap Policy also identifies Plaintiff as the insurer and lists Plaintiff's address in London. The Wrap Policy contains a single reference to RT Specialty, which the Wrap Policy identifies as the "wholesale broker."

Paladin Risk Management ("Paladin"), a California company, acted as the policy administrator for the Wrap Policy.

On January 26, 2016, Fernando Axinicuilteco-Huizache (the "Decedent") was fatally injured during a painting job on a construction site for which Defendant was the general contractor. On

or about February 2, 2016, Defendant's insurance agent, Eaton, notified Plaintiff of the Decedent's death and subsequently made a claim seeking reimbursement pursuant to the Wrap Policy. (See Rainey Decl., Exs. N-P.) It does not appear that, during this process, Defendant or Eaton ever communicated with Coventry in New York. On March 7, 2016, Plaintiff notified Defendant that it was taking the position that there was no potential coverage for any claims arising from the Decedent's death because the construction project where the accident occurred had not been enrolled under the Wrap Policy. (See id., Ex. P.) Defendant subsequently notified Paladin of its claim, for which Paladin also denied coverage. (See Movant's Mem. at 1.) On or about January 31, 2017, the Movants, who are the parents of the Decedent, filed a wrongful death action in Superior Court in Arizona against Defendant. At that time, Defendant claimed that it was essentially insolvent and therefore unable to pay any judgment to the Movants. As a result, Defendant and Movants entered into an agreement (the "Damron Agreement") on or around April 28, 2017, by which Defendant assigned to the Movants:

> all interests, rights, claims, and causes of action that American Builders may have against ProSight, Paladin . . . (and their respective insurers, reinsurers, agents, employees, representatives, and successors) under the policies or contracts related to or arising from the refusal to defend or indemnify American Builders in the lawsuit or the declaratory-judgment action, or otherwise related to the handling of American Builders' claim for coverage in those actions, including but not limited to all statutory rights, contract claims, tort claims, and bad-faith claims.

(Declaration of Jessica Tinoco ("Tinoco Decl."), Ex 1.) Defendant retained all rights and causes of action to seek reimbursement for attorneys' fees and litigation expenses in connection with either the wrongful death action or the instant litigation. Id. The Damron Agreement also gave Movants the right to litigate the instant action, either "in their own names or as real-parties in interest in the name of American Builders." Id.

Movants filed a Motion to Dismiss in this case on August 4, 2017 in which they claim that Defendant is not subject to personal jurisdiction in this forum and that Plaintiff's choice of venue

was improper.  (See Movant's Mem. at 3.)  In support of their argument that the Court lacks personal jurisdiction over the Defendant, Movants assert that none of N.Y. CPLR § 302's provisions provide grounds for jurisdiction as Defendant does not transact any business within the state, has not committed a tortious act within the state, and does not own, use or possess any real property within the state.  (Id. at 5.)  Movants also contend that "even if [Defendant] arguably engaged in a single transaction with Coventry in New York," and such transaction satisfied the requirements of CPLR § 302(a), Defendant lacks sufficient minimum contacts with New York such that the exercise of jurisdiction would violate due process.  (Id. at 6-7.)  Additionally, Movants argue that venue is improper in this District as Defendant is not a resident of New York and "a substantial part of the events giving rise to the claim" occurred in Arizona, not New York.  Therefore, they argue, Plaintiff could have instead brought this action in Arizona.  (Id. at 17-18); 28 U.S.C. § 1391(b)(1)-(3).  Movants argue in the alternative that this action should be transferred to the District of Arizona pursuant to 28 U.S.C. § 1406(a).

On the other hand, Plaintiff argues that Defendant's purchase of the Wrap Policy from Coventry, a New York corporation, constitutes transacting business in the state pursuant to CPLR § 302(a)(1).  Furthermore, Plaintiff claims that Defendant's agents "repeatedly reached into New York to solicit, purchase and pay for the wrap policy and then did so again to dispute ProSight's coverage position."  (Plaintiff's Memorandum in Opposition to Movants' Motion to Dismiss ("Pl's Mem.") at 9-10.)  Plaintiff contends that such actions are "sufficient to invoke jurisdiction."  (Id. at 9.)  Plaintiff asserts that venue is proper because the Wrap Policy was produced by Coventry in New York and therefore that a substantial part of the events giving rise to its claim occurred in this District.  (Id. at 18.)

4

## II. DISCUSSION

Where a motion to transfer on the grounds of improper venue pursuant to § 1406(a) is pending before the Court, the Court may deny that motion and sua sponte transfer the action pursuant to § 1404(a) in the "interest of justice" and "for the convenience of the parties." 28 U.S.C. § 1404(a); Creighton v. Metro. Life Ins. Co., No. 15-CV-0959, 2015 WL 6134407, at *4 (S.D. Ill. Oct. 19, 2015) (denying defendant's motion to transfer under § 1406(a) and transferring the action sua sponte under 1404(a)); Smith v. Albertsons, Inc., No. 06-CV-52, 2006 WL 1900785, at *2 (E.D. Tex. July 11, 2006) (same); see Armstrong v. Costco Wholesale Corp. & Nice-Pak Prod., Inc., 234 F. Supp. 3d 367, 369–70 (E.D.N.Y. 2017) ("A court may transfer a case sua sponte."); Lead Indus. Ass'n, Inc. v. Occupational Safety & Health Admin., 610 F.2d 70, 79 n.17 (2d Cir. 1979) ("The broad language of 28 U.S.C. [§] 1404(a) would seem to permit a court to order transfer Sua sponte"). As the parties have addressed the factors relevant to a § 1404(a) inquiry in their submissions, they have already had an opportunity to be heard on this issue.[1] (See, e.g., Dix Decl. ¶¶ 18-20; Pl's Mem. at 19.)

As a threshold matter, § 1404(a) requires that the transferee forum is one where, at the time the suit was brought, the defendant was subject to personal jurisdiction and venue would have been proper. Societe Generale v. Florida Health Scis. Ctr., Inc., No. 03-CV-5615, 2003 WL 22852656, at *7 (S.D.N.Y. Dec. 1, 2003). Once this has been established, the Court considers a number of factors in determining whether transfer is appropriate: "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties." New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc., 599 F.3d 102,

---

[1] Although Movants state that they are not bringing a motion under § 1404(a) at this time, the Court finds that sua sponte transfer under that Section is appropriate. (See Movants' Reply at 14.)

112 (2d Cir. 2010).

"District courts have broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis." D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 106 (2d Cir. 2006).  District courts also have the power to transfer venue pursuant to § 1404(a) even if the court lacks personal jurisdiction over the defendant.  Fort Knox Music Inc. v. Baptiste, 257 F.3d 108, 112 (2d Cir. 2001).  Moreover, "'the mere appearance of a colorable jurisdictional issue may be a factor in a court's decision to transfer venue.'"  Dollar Phone Access, Inc. v. AT & T Inc., No. 14-CV-3240, 2015 WL 430286, at *4 (E.D.N.Y. Feb. 2, 2015) (quoting Worldwide Futgol Assoc. v. Event Entm't, Inc., 983 F. Supp. 173, 182 (E.D.N.Y. 1997)).

Here, it is unnecessary for the Court to reach the question of whether it has personal jurisdiction over Defendant because, as explained below, transfer to the District of Arizona is appropriate pursuant to 28 U.S.C. § 1404(a).

As an initial matter, Defendant is clearly subject to personal jurisdiction in Arizona as it is an Arizona company and venue is proper in the District of Arizona pursuant to 28 U.S.C. § 1391(b)(2).

The majority of the relevant factors weigh in favor of transferring this action to the District of Arizona.  Here, there is not one clear locus of operative facts, but more relevant events occurred in Arizona than in New York.  Only a few relevant events occurred in New York, such as the production of the insurance policy and Coventry's negotiation of the policy from New York.[2] By contrast, the Wrap Policy was purchased by an Arizona construction company via an Arizona

---

[2]  The record contains three sets of invoices: (1) invoices that Coventry sent to RT Specialty seeking payment of insurance premiums for the Wrap Policy; (2) invoices RT Specialty sent to Eaton; and (3) invoices which Eaton sent to Defendant.  The record, however, does not contain any evidence of payments being sent by either Defendant or Eaton to Coventry in New York.

broker in connection with construction projects located in Arizona. The accidental death of the Decedent, which gave rise to the coverage dispute, occurred in Arizona. Also, the main issue to be addressed in this litigation is whether Defendant properly enrolled the project at which the Decedent was killed in the Wrap Policy, and Defendant's enrollment of projects necessarily would have originated in Arizona.

The "convenience of the parties" factor likely weighs in favor of transfer and is at best, neutral. Defendant and the Movants are located in Arizona. Plaintiff has various office locations, and while it does have a location in New York, it appears as though that office has not been involved in the coverage dispute. Moreover, although the record does not contain evidence about the Movants' financial condition, it is obvious that the "relative means" factor favors the Defendant, an insolvent corporation, and the Movants, the parents of a painter, when compared to an entity such as Lloyd's.

Additionally, there is at least a colorable question as to whether this Court has personal jurisdiction over Defendant. Plaintiff claims that Defendant transacted business in New York pursuant to N.Y. CPLR § 302(a) and that its contacts with this District are sufficient to establish personal jurisdiction. There is, however, no evidence in the record that Defendant had any contact with Coventry and there is little evidence suggesting that Defendant could have anticipated being haled into court in this jurisdiction. Although Defendant knew, from the face of the Wrap Policy, that Coventry was located in the New York, there is no evidence that: (1) Defendant knew that negotiations occurred between RT Specialty and Coventry before the Wrap Policy was signed; or (2) that Defendant was aware that payments for the Wrap Policy would be sent to New York. (See Dix Decl. I ¶¶ 15-16; Declaration of Von Dix in Support of Movants' Reply ("Dix Decl. II") ¶¶ 16-17, 21-25.) Notably, the Wrap Policy does not explicitly state that any premium payments or communications must be directed to Coventry in New York.

7

By contrast, the Wrap Policy states that any claims should be directed to Plaintiff's offices in either London, United Kingdom or Morristown, New Jersey and that service of process should be directed to the New Jersey office.  (See Rainey Decl., Ex. 1.)  Relatedly, the Wrap Policy does not contain any choice of law or venue provision that would have led Defendant to anticipate being haled into a New York court.

Furthermore, although Plaintiff contends that Defendant's "Arizona-based agents purposefully and repeatedly reached into New York to solicit, purchase and pay for the Wrap Policy and then did so again to dispute ProSight's coverage position," (see Pl's Mem. at 10), this argument is flawed in a number of respects and is insufficient to clearly establish personal jurisdiction.    First, contrary to Plaintiff's claim, there is no evidence that Eaton ever communicated with or paid premiums to Coventry in New York.  (See supra note 2.)  Second, although RT Specialty communicated with and paid premiums to Coventry in New York, (see Rainey Decl., Exs. D-F, H-N), RT Specialty was two steps removed from Defendant and Plaintiff has not put forth any facts or argument in support of its conclusory assertion that RT Specialty qualifies as Defendant's agent for the purposes of personal jurisdiction.  Cf. Newman v. Capitol Life Ins. Co., 45 F. Supp. 3d 376, 379 (S.D.N.Y. 2014) ("a Court may not exercise jurisdiction over a non-resident principal on an agency theory absent any proof that the principal knew about, authorized, and exercised some control over the actions of the alleged agent") (internal quotation marks omitted).  In light of all of the above, there is at least a colorable question as to whether this Court has personal jurisdiction over Defendant.

Finally, the only relevant factor that weighs in Plaintiff's favor is plaintiff's choice of forum.  Although this is an important consideration, it is outweighed by the other factors discussed above, including the "serious questions that remain concerning whether there is personal jurisdiction in this district over [Defendant]."  Societe Generale, 2003 WL 22852656, at *7.

8

Moreover, Plaintiff's choice of forum carries less weight because this is a declaratory judgment action. Plaintiff only brought this action because it perceived a threat of suit and therefore "its posture before the court is more akin to a defendant than an ordinary plaintiff seeking relief." Id.

After considering all of the relevant factors outlined above, the Court concludes that this action should be transferred to the District of Arizona.

### III. CONCLUSION

For the foregoing reasons, the Movants' motion to dismiss pursuant to Rule 12(b)(2) and (3) or, alternatively to transfer pursuant to 28 U.S.C. § 1406(a) is denied as moot. However, pursuant to 28 U.S.C. § 1404(a), the Court sua sponte transfers this matter to the United States District Court for the District of Arizona.

**SO ORDERED.**

Date:  December 14, 2017
       Central Islip, New York


                              _____/s/ (JMA)_____
                              Joan M. Azrack
                              United States District Judge